UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

RAYMOND R. MASON, Sr
Plaintiff

vs

CENTRAL MASS TRANSIT MANAGEMENT/
WORCESTER REGIONAL TRANSIT AUTHORITY,
DAVID TRABUCCO, IN THEIR INDIVIDUAL AND
OFFICIAL CAPACITY JAMES PARKER, IN THEIR
INDIVIDUAL AND OFFICIAL CAPACITY AND
JONATHAN CHURCH, IN THEIR INDIVIDUAL
AND OFFICIAL CAPACITY, AMALGAMATED
TRANSIT UNION LOCAL 22, KENNETH KEPHART
IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY
                                          Defendants

Case No. 18CV40202-TSH

Complaint

Jury Trial Demanded

## 13.1 EMPLOYEE CLAIM AGAINST UNION AND EMPLOYER—LABOR MANAGEMENT RELATIONS ACT (LMRA) § 301 (29 U.S.C. § 185)

### INTRODUCTION

This is a civil action commenced pursuant to Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, for wrongful termination and breach of contract, the Massachusetts Civil Rights Act, Mass.Gen.L. ch. 12, §11I; Title VII of the Civil Rights Act of 1964, and tortious interference with employment relationship

1

## **PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff, Raymond R. Mason, Str., who resides at 5 Monticello Drive, West, Worcester, MA, 01603, brings this civil lawsuit against both, the union and employer, pursuant to Section 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, for wrongful termination, breach of contract, and breach of the duty of fair representation.

2. Defendant, Worcester Regional Transit Authority (WRTA,) located at 60 Foster Street, Worcester MA., 01608, is a public, non-profit organization charged with providing public transportation to the city of Worcester, Massachusetts and the surrounding towns. The WRTA was created in September 1974 under Chapter 161B of the Massachusetts General Laws.

3. Defendant, Mr. Jonathan Church, Administrator for the Worcester Regional Transit Authority (WRTA), located at 60 Foster Street, Worcester, MA 01608.

4. Defendant, Mr. James Parker, General Manager, for the Central Mass Transit Management, located at 42 Quinsigamond Ave, Worcester MA, 01608.

5. Mr. David Trabucco, Assistant General Manager for the Central Mass Transit Management, located at 42 Quinsigamond Ave, Worcester MA. 01608.

6. The Defendant, Central Mass Transit Management, Inc., located at 42 Quinsigamond Ave, Worcester MA, is a Domestic Profit Corporation, who has a contract with WRTA to run the day to day operation of buses and vans owned by the WRTA.01608.

7. Defendant Amalgamated Transit Union Local 22 is located at 51 Union Street, Worcester MA., 01608. The ATU is a member of the ALF-CIO and the CLC – the national labor organizations of the United States and Canada. The Amalgamated Transit Union Local 22 represents the WRTA transit workers.

8. Defendant Mr. Kenneth Kephart, Business Agent for the Amalgamated Transit Union Local 22, located at 51 Union Street, Worcester, MA 01608

9. Jurisdiction is conferred on this court by 28 U.S.C. § 1331(a), because the cause of action arises under the Constitution and laws of the United States.

10. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391 in that all of the parties reside in this federal district.

## FACTS

11. Plaintiff Raymond Mason, worked in good standing, for the employer, (WRTA/CMTM), part-time, approximately 20 hours per week, as a van driver from May 5, 2003, through April 5, 2017. Plaintiff, Mason was employed by the predecessor of CMTM on October 13, 1971 as a fueler. Between 1971 and 2000, the Plaintiff worked in a variety of full-time positions, retiring voluntarily as foreman. Plaintiff also held the position of Shop Steward for 13 years. Plaintiff was rehired on May 5, 2003, by the RTA Transit Services, a predecessor of the CMTM as a part-time van driver. The Defendants, Mr. David Trabucco, Operation Manager for CMTM, Mr. James Parker, General Manager of Central Mass Transit Management, the daily operator of the WRTA, Miss Francesca Jandrow, Transportation Coordinator, intentionally interfered with Plaintiff's employment relationship and thereby caused the Plaintiff to lose his job for the CMTM.

12. On April 5, 2017, Plaintiff, Raymond R. Mason was terminated from his position as a van driver for the Defendants' Worcester Regional Transport Authority ("WRTA") and Central Mass Transit Management, Inc. Plaintiff was charged with violating a CMTM policy prohibiting cell phone use while driving a van.

13. Plaintiff's evidence will include (1) entrapment, (2) enticement by the Defendant, (3) alteration of documents, (4) intentional misrepresentation of facts, (5) breach of contract, (6) retaliation for performing a union activity, (grievances), (7) denial of fair representation by the Amalgamated Transit Union Local 22 and (8) harassment.

14. According to CMTM, and for the safety of all passengers, CMTM entered into a historic agreement with the Amalgamated Transit Union Local 22 on December 23, 2015, regarding the use of personal electronic devices by the drivers while on duty in a fixed route bus. The agreement between CMTM and the Union set the standard for regulating electronic devices use

3

drivers while not banning driver's ability to carry their electronic devices on their person while on duty.

15. According to the terms of the Supplemental Agreement between Central Mass Transit Management and Amalgamated Transit Union Local 22, **(used only between the Executive Board of the Union and the Company and is not distributed to employees nor is it posted on the vans or buses of the WRTA/CMTM),** an employee cannot challenge the discipline imposed for an employee's use of a personal electronic devices while on duty in a fixed route bus or lift equipped van. The agreement provides that if it is determined and verified that a driver used a personal device while in front of the yellow line on a fixed bus route, the consequence will be immediate "termination" of employment by the Company.

16. On April 3, 2017, Plaintiff returned to work after a medical emergency at home concerning Plaintiff's wife along with his own recovery from pneumonia.

17. Plaintiff, Mason had just left the office of the WRTA Van Division and was still on the private premises, (parking lot), owned by the WRTA when he received a call from Miss Francesca Jandrow, Transportation Coordinator, for the CMTM. Knowing that there was an emergency at Plaintiff's home and within minutes from the time he left the Van Division, Plaintiff assumed that the call was regarding his wife. Plaintiff was alarmed, for it was a "violation" of Company's policy and out of the ordinary for him to receive a call on his cell phone while on duty from his employer. Not all employee's had knowledge of this policy. Plaintiff was among one of those employees. Plaintiff, thinking that the call was an emergency in nature, and given the extenuating circumstances, Plaintiff answered the call.

18. On the face, Miss Jandrow's call to Plaintiff appeared to be official, offering Mason a night time position at the WRTA Van Division. However, evidence will show that Miss Jandrow's call was in pretense, it was a sham, there was no night time position. This is why Plaintiff was not approached with this offer of a night time position when he first arrived and reported for work. The call placed to Plaintiff was calculated. Estimating the time, it took for Mason to be on his van, this fictitious call was then placed to Plaintiff. Miss Jandrow's call to Mason constitutes a breach of Company's policy, conspiracy, intentional infliction of emotional distress, intentionally

4

interference with Plaintiff's employment relationship and thereby causing economic harm to Plaintiff by the loss of his position from the WRTA/CMTM.

19. As a direct result, that call Plaintiff received from the WRTA Van Division, on April 3, 2017 at 2:23 p.m., was shaded to bring about the outcome of a video recording showing Plaintiff driving the van on CMTM property, (parking lot), in violation of CMTM's Policy on Use of Personal Electronic Devices. There were consequences had the Plaintiff not answered his employer's call. "CMTM's safety of all passengers" consists of an Agreement against employees, however, safety is not an issue, when the CMTM allows their personal (dispatch) to contact employees on their cell phones without any discipline to the caller.

20. This product of manipulation by the WRTA/CMTM, enabled the WRTA/CMTM to rely heavily on the video of Plaintiff, showing Plaintiff receiving a call on his cell phone from the Van Division. This video is not as cut- and-dry as the Defendant CMTM wants one to believe. The video used against the Plaintiff is evidence obtained from entrapment, interception, and monitoring.

21. Mr. Kenneth Kephart, Business Agent for the Amalgamated Union local 22 made no effort to hear Plaintiff's explanation of events that resulted in his discharged. The Union showed a reckless disregard and thereby breached its duty of fair representation.

22. The NLRB found that the "Employer breached a contract and as such, the "Charging Party's (Plaintiff) termination is without cause. The Uniform Commercial Code, Section 28: 1-304 asserts that the Employer violated the: implied covenant (promise) of good faith and fair dealing by enticing the Petitioner into answering the call from the WRTA Van Division." The policy was no longer enforceable. Therefore, the Plaintiff did not violate the policy."

23. Plaintiff's employer intentionally misrepresented facts. The Union failed to challenge the employer's creditability of Mr. David Trabuco, Operation Manager for CMTM, claiming to be a witness, observing Plaintiff committing this infraction. This narrative by Mr. David Trabucco is an exaggeration and totally false. Mr. Trabucco gave false testimony to the Plaintiff's Union and Massachusetts Commission Against Discrimination, as he was never a witness, nor did he observed Mason talking on his cell phone. This fraud perpetrated by Mr. David Trabuco, Operation Manager for CMTM, is confirmed not only by a witness, but the video, itself.

24. The video reveals that the appearance of Mr. Trabucco is absent, as he fails to appear in the video. The video also reveals Plaintiff stopping his van on the premises of the WRTA/CMTM. There is no Mr. Trabucco approaching or entering the van. Mr. Trabucco fails to make his presence known to Plaintiff at that time, and more importantly, Mr. Trabucco, Operations Manager, fails to take any disciplinary action against Plaintiff. CMTM, breaching the contract allowed Plaintiff to work his four-hour shift.

25. The Union acted in "bad faith," and never investigated this evidence of fraud, deceit and misrepresented facts by Mr. Trabucco.

26. Even more astounding, approximately two hours into Plaintiff's shift, the WRTA/CMTM dispatch, (Jandrow), using the radio instead of calling Plaintiff on his cell phone, informed Plaintiff that the van he was driving was defective. She informed Plaintiff that his van he was driving and transporting passenger's in, had been scheduled for repairs and needed to be returned to WRTA.

27. CMTM's safety of all passengers consists of an Agreement against employees, however, safety is not an issue, when CMTM permits employees to drive defective vans, transporting passengers, on the highway.

28. A Freedom of Information was made by the Plaintiff to the WRTA, Mr. Jonathan E. Church, Administrator, requesting the name of the person responsible for assigning to him a faulty van to have been driven off the Company's property. This FIOA went ignored by the WRTA.

29. Again, CMTM breaching the contract, Plaintiff returned to the Company, (barn), where he was assigned another van. Not a whisper to Plaintiff of discipline, no termination, as mandated by Agreement. The Union completely ignored this matter of Plaintiff driving an unsafe van while transporting (wheel-chair) passengers.

30. Plaintiff challenged his employer's account of being a witness at the hearing conducted by Massachusetts Commission Against Discrimination in August of 2017. Mr. David Trabuco, Operation Manager for CMTM, was unable to explain or provide evidence proving his assertion. By Mr. David Trabuco, orchestrating such falsehood enabled him to open an investigation and

6

pull the video against the Plaintiff. According to the contract, if there is no complaint or witness, it is prohibited for anyone to pull a tape from a van for the intentions of using it against an employee. Again, the Defendant CMTM breached the contract, for there was no witness or complaint.

31. Mr. Trabucco viewed the video and issued a notice of Investigation of Improper Cell Phone Use While on Duty in the Company Vehicle on April 4, 2017. In the notice, Mr. Trabucco identified the date of the incident as April 4, 2017. Mr. Trabucco spoke with Mr. Mason's Union Representative and scheduled a disciplinary hearing for the same day, April 4, 2017.

32. According to Mr. Trabucco, he was informed by Mr. Mason's Union Business Agent, Ken Kephart that Mr. Mason refused to be present at the disciplinary hearing to answer the charges against him. Mr. Kephart, as Mr. Mason's Union Representative, appeared at the disciplinary hearing and answered the charges on Mr. Mason's behalf. Mr. Trabuco's claim "that Plaintiff refused to be present at the disciplinary meeting scheduled on April 4, 2017, and that Plaintiff had the opportunity to answer to the discipline infraction charges against him is another intentional misrepresentation of facts. Plaintiff asserts that this event never happened. In addition, Mr. Trabuco's claim that "Ken Kephart, Union Business Agent was present at that hearing on April 4, 2017 and answered to the charges on Plaintiff's behalf is alarming, for such behavior by Business Agent Ken Kephart, would *"constitute a breach of duty of fair representation."* Business Agent Kephart cannot represent Plaintiff unless Plaintiff is present. Plaintiff was denied any due process, a violation of the Fifth Amendment.

33. Contradicted by the absences of no credible documentation or record to support the occurrence of this event (hearing), Plaintiff restates, that he was never given the opportunity to answer the charge against him. There is absolutely no truth to Mr. Trabuco's account that "Plaintiff refused to attend or be present at a hearing".

34. The Union disregarded Defendant Trabuco's biases towards the Plaintiff. Due to the death of Plaintiff's son on August 27, 2016, circumstances in the Plaintiff's life had changed and overtime was no longer an option. Plaintiff notified Mr. David Trabucco of this, but to no avail. After Plaintiff made known of his decision not to work overtime, Plaintiff's work was made more difficult, by purposefully changing his work schedule to conflict with family responsibilities. On February 13, 14 and 15, of 2017, Plaintiff had no choice but to file grievances with the Union.

35. Equally important is the timing of Plaintiff's termination. Due to the close temporal proximity between a protected activity (grievances), and the adverse employment action taken against the Plaintiff certainly cast suspicion and suggest that the real reason for taking this action against Plaintiff was pretextual.

36. On April 4th, Plaintiff was called by his Business Agent Kenneth Kephart to report to the company. Plaintiff met with Business Agent Kenneth Kephart in the lobby of the company. The employer's action violated the terms of the collective bargaining agreement and that the Union breached its duty to act honestly and in good faith and to avoid arbitrary conduct. Mr. Kephart, addressing Plaintiff stated" you have two choices, "either to resign or be fired and lose everything". Mr. Kephart alluded to a video of April 4, 2017, causing Plaintiff's dismissal. Plaintiff requested to see this video of April 4th and was flatly denied by his Business Agent and the Company. The Company was able to view the video, the Union Business Agent, Kephart, was able to view the video but Plaintiff was not permitted to view this video of April 4, 2017.

37. On September 20, 2017, over five (5) months after the fact, by way of a FOIA, and through the Secretary of the Commonwealth, Public Records Division, Plaintiff finally received a copy of the video. The Union again, breached its duty of fair representation.

38. On April 4, 2017, Mr. Ken Kephart, Business Agent for Local 22, failed to accompany Plaintiff into Dave Trabuco's, office. Without the presence of Ken Kephart, Mr. Trabucco and Plaintiff then entered Jo-Ann Clougherty's office. (Human Resources) There, Plaintiff was instructed by Dave Trabucco to sign the **"Notice of Termination"**. The word **"Resignation"** was added after Plaintiff signed.

39. On April 5, 2017 and fearing of being fired for insubordination, without any representation or council by Ken Kephart, Business Agent for the Amalgamated Local 22, Plaintiff signed, but under duress. Only two witnesses were left, Mr. David Trabucco and Jo-Ann Clougherty. The Notice of Termination had been altered to look as if Plaintiff Mason resigned. The NLRB found that the Plaintiff was terminated. Mr. Kephart, Business Agent failed to obtain a copy of the specific charge or charges to which Plaintiff was to answer for dated, April 3, 2017. Business Agent Ken Kephart failed to challenge Plaintiff's termination or the circumstances surrounding

Plaintiff's dismissal. Mr. Kephart failed to inquire why Plaintiff received a call on his cell phone from the Defendant WRTA/CMTM Van Division, violating the company's policy. Mr. Kephart failed to challenge the video, breaching the contract or policy.

40. Instead, on April 4, 2017, Business Agent Ken Kephart left Plaintiff Mason alone in the lobby of the WRTA/CMTM., refusing to remain as a witness to the events that were taken place at that time.

41. Evidence will demonstrate that the Union failed to investigate the events of April 3, 2017. In August 2017, Plaintiff Mason learned for the first time that Defendant CMTM decided to change their date from April 4, 2017, to April 3, 2017. This created confusion for charges were levied by Plaintiff's employer on April 4, 2017. The Union made no attempt clarify the events of April 3, 2017 and that of April 4, 2017. CMTM, not conforming to the Agreement as mandatory, caused Plaintiff added confusion and emotional stress.

42. Mr. Kenneth Kephart, Business Agent for the Amalgamated Transit Union Local 22, violated a breach of contract by his failure to challenge the Defendant's change of dates from April 4, 2017 to April 3, 2017.

43. Evidence will show that this policy does not apply to all, for this company disciples one more harshly than others for engaging in this infraction. Employees who have engaged in the use of their cell phones were treated differently. It was the obligation and responsibility of Business Kephart's to challenge this alleged charge against Plaintiff of April 4, 2017. Mr. Kenneth Kephart, Business Agent for the Amalgamated Transit Union Local 22, violated a breach of contract by allowing this charge to stand. Plaintiff was not given the same representation that others were provided with.

44. Two other employees were caught using their cell phones while driving on public roads. Neither of them lost their jobs. Had Plaintiff been fairly represented by his Union, and given the same rights that other employees receive, the charge of April 4, 2017 would have been dismissed. Clarification between the two days would have been amended. Moreover, this was Kephart's obligation and responsibility to have challenged the enticement and entrapment that Plaintiff was subjected to by the company. The NLRB found this to be discrimination. The matter of discrimination is currently before the Massachusetts Commission Against Discrimination.

subjected to by the company. The NLRB found this to be discrimination. The matter of discrimination is currently before the Massachusetts Commission Against Discrimination.

## **FIRST CAUSE OF ACTION**

45. The allegations contained paragraphs 1 through 48 are hereby realleged and incorporated by reference herein.

46. The Defendants, Central Mass Transit Management, Worcester Regional Transit Authority, Mr. David Trabucco, and Mr. James Parker, breached a contract and as such, Plaintiff's termination was without cause. CMTM placed the public's as well as the Plaintiff's safety at risk as Plaintiff was assigned a faulty van. This was a safety hazard.

47. By Mr. Jonathan Church, Administrator, for the WRTA, failing to perform his duty to make sure all vehicles belonging to the WRTA was safe for transporting passengers, he allowed the Central Mass Transit Management to assign a faulty van to Plaintiff. Plaintiff, unaware of the van he was assigned by the CMTM, was defective while Plaintiff was transporting passengers. This created a safety hazard, putting the public and Plaintiff's safety in jeopardy. Mr. Jonathan Church, Administrator, for the WRTA, allowed Plaintiff to be discriminated against.

48. Amalgamated Transit Union Local 22, Mr. Kenneth Kephart has failed in his duty as Business Agent for Local 22, breaching its duty to fairly represent the Plaintiff's interest under the collective bargaining agreement.

49. Plaintiffs allege that as a result of the violations described above has suffered and will continue to suffer for the following:

a. Emotional distress; and

b. Loss of employment.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully request that this court:

(1) To reinstate forthwith, Plaintiff to back to his employment WRTA/CMTM as a van driver.

(2) To pay all back wages to Plaintiff.

(3) All legal cost associated with this action.

(4) Award compensatory damages in favor of Plaintiff in an amount to be determined by the finder of fact in accordance with the proof, plus interest at the legal rate until paid;

(5). Award punitive damages against Defendants for their conduct in willful and wanton disregard of the rights of Plaintiff in an amount to be determined by the finder of fact in accordance with the proof, plus interest at the legal rate until paid;

(6). Grant Plaintiff such other relief as may be deemed just and proper; and

(7). Grant Plaintiff a trial by jury.

Respectfully submitted,

*/s/ Raymond R Mazor*

5 Monticello Dr., West
Worcester, MA 01603
508 792-2094

Dated: November 30, 2018