# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| RAYMOND R. MASON, Sr. | ) ) | |
| Plaintiff, | ) ) ) | CIVIL ACTION NO. 18-40202-TSH |
| v. | ) ) | |
| CENTRAL MASS TRANSIT MANAGEMENT/WORCESTER REGIONAL TRANSIT AUTHORITY; DAVID TRABUCCO, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY; JONATHAN CHURCH, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY; AMALGAMATED TRANSIT UNION LOCAL 22; KENNETH KEPHART, IN THEIR INDIVIDUAL AND OFFICIAL CAPACITY, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT (Docket No. 16)

**August 2, 2019**

Raymond R. Mason, Sr. ("Plaintiff") brings this action against several parties. For the purposes of this order, the relevant parties are Plaintiff's union, Amalgamated Transit Union Local 22 ("the Union"), and Business Agent for the Union, Kenneth Kephart ("Mr. Kephart") (collectively "Defendants"). In his Amended Complaint, Plaintiff alleges claims for breach of the duty of fair representation, violations of Title VII, the Fifth, Sixth, and Fourteenth Amendment, 18 U.S.C. § 241, and Mass. Gen. Laws ch. 12 § 11I. Defendants have filed a motion to dismiss all

counts against them. (Docket No. 16). For the reasons stated below, Defendants' motion is *__granted__*.

## Background

The following facts are taken from Plaintiff's First Amended Complaint (Docket No. 14) and are assumed to be true for the purposes of this motion.

On May 5, 2003, Plaintiff began working for Worcester Regional Transit Authority ("WRTA")/Central Mass Transit Management, Inc ("CMTM") as a part-time van driver. On December 23, 2015, CMTM and the Union entered into a Supplemental Agreement that stated, "if [an] employee is found to be using a personal electronic device and the employee is in front of the yellow line in a fixed route bus or in front of the curb side door well stanchion in a lift equipped van, the consequence will be immediate termination of employment by the Company." (Docket No. 14-1, at 6). This agreement also stated that, "an employee cannot challenge the discipline imposed for an employee's use of a personal electronic device while on duty." *Id.* Neither the Union nor CMTM circulated this agreement to their employees.

On April 3, 2017, Plaintiff returned to work after a medical emergency at his home. At 2:23 p.m., as he was leaving the parking lot of WRTA in his van, he received a call on his cell phone from Ms. Jandrow, Transportation Coordinator for CMTM. Unsure if the call was related to the previous emergency, Plaintiff answered the call and Ms. Jandrow offered him a night-time position at the WRTA Van Division.

The next day, David Trabucco ("Mr. Trabucco"), Assistant General Manager for CMTM, notified Plaintiff that CMTM was investigating Plaintiff's improper cell phone use while on duty.[1]

---

[1] Plaintiff believes that this notice, and the related investigation, erroneously claimed that the conduct in question occurred on April 4, 2017, when in fact it occurred on April 3, 2017. Plaintiff believes that this error was "intentional to prevent the truth from emerging." (Docket No. 14, at 7). Plaintiff learned about the conflicting dates on August 24, 2017.

Mr. Trabucco spoke with Business Agent Kephart and scheduled a disciplinary hearing for that day. Mr. Kephart told Mr. Trabucco that Plaintiff refused to be present at the hearing. As a result, Mr. Kephart attended the hearing on Plaintiff's behalf. *See* Docket No. 14, at 10. However, Plaintiff claims that, "there is absolutely no truth to Mr. Trabuco's account that 'Plaintiff refused to attend or be present at a hearing.'" (Docket No. 14, at 11). After the hearing, Mr. Kephart called Plaintiff and asked him to report to the company building, where they met in the lobby. At this meeting, Mr. Kephart told Plaintiff, "you have two choices, either to resign or be fired and lose everything." *Id.* at 12. Mr. Kephart alluded to a video that would show Plaintiff using his phone while on duty, but would not allow Plaintiff to view this video.[2]

After the meeting, Plaintiff and Mr. Trabucco went to the office of Jo-Ann Clougherty, from Human Resources, where Plaintiff was instructed by Mr. Trabucco to sign the Notice of Termination. Plaintiff signed the notice and was terminated from his position.[3] Plaintiff believes the word "resignation" was added to the notice after he signed it.

After he was terminated, and before filing this claim, Plaintiff filed claims with the National Labor Relations Board ("NLRB"). Plaintiff provided the Court with a response letter from the NLRB dated July 26, 2018. This letter references a March 9th, 2018 letter from Plaintiff to the NLRB, "requesting, for a second time, reconsideration of [the NLRB's] decision denying [Plaintiff's] appeal in the captioned cases." (Docket No. 14-1, at 18). The heading of the July 26, 2018 letter references two cases against CMTM/WRTA and one against the Union.[4]

---

[2] Plaintiff received a copy of the video on September 20, 2017. (Docket No. 14, at 12).
[3] It is unclear from Plaintiff's complaint when he signed the notice. The Complaint states that on April 4, 2017, Mr. Trabucco instructed Plaintiff to sign the notice while in Jo-Ann Clougherty's office. The Complaint then says that on April 5, 2017, Plaintiff signed the notice with only Mr. Trabucco and Jo-Ann Clougherty as witnesses. The Notice of Termination is attached to the Complaint and is dated April 5, 2017. (Docket No. 14-1, at 4).
[4] Plaintiff characterizes this July 26, 2018 letter as confirmation from the NLRB that, "Employer breached a contract and as such the Charging Party's (Plaintiff), termination was without cause. It was at the same

Plaintiff also claims that Mr. Kephart represented two other employees who were caught using their cell phones while driving. Unlike Plaintiff, those employees did not lose their job.

## **Legal Standard**

A defendant may move to dismiss, based solely on the complaint, for the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559, 127 S.Ct. 1955 (2007). Although detailed factual allegations are not necessary to survive a motion to dismiss, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

In evaluating a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 68 (1st Cir. 2000). It is a "context-specific task" to determine "whether a complaint states a plausible claim for relief," one that "requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937 (2009) (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). On the

---

time that Plaintiff discovered that his Union failed him for a breach of the duty of fair representation." *See Docket No. 14,* at 7-8 (quoting the letter attached as Exhibit I). However, this quote is not found in its entirety in the attached letter. The portion that can be found within the letter is a description of the position that the Plaintiff argued in his motion for reconsideration and is not representative of any finding by the NLRB. The letter concludes by stating, "we make no determination with respect to the breach of contract and entrapment claims under the UCC." (Docket No. 14-1, at 18).

other hand, a court may not disregard properly pled factual allegations, "even if it strikes a savvy judge that actual proof of those facts is improbable." *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955.

Because Plaintiff appears pro se, we construe his pleadings more favorably than we would those drafted by an attorney. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Nevertheless, Plaintiff's pro-se status does not excuse him from complying with procedural and substantive law. *See Ahmed v. Rosenblatt,* 118 F.3d 886, 890 (1st Cir. 1997).

## **Discussion**

1. *Federal Claims Against the Union*

    a. *Breach of the Duty of Fair Representation*

Plaintiff claims that the Union breached the duty of fair representation by failing to represent Plaintiff appropriately throughout the events leading up to and following his termination. The Union argues that the statute of limitations has run on Plaintiff's claim, as it is part of a hybrid Section 301/fair representation claim. To prevail on a statute of limitations defense at the motion to dismiss stage, "the facts establishing that defense must: (1) be definitively ascertainable from the complaint and other allowable sources of information, and (2) suffice to establish the affirmative defense with certitude." *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008) (quotation marks and citation omitted).

A hybrid Section 301/fair representation claim, "is one in which the plaintiff has a cause of action against both the employer and the union." *Cabarga Cruz v. Fundacion Educativa Ana G. Mendez, Inc.*, 822 F.2d 188, 191 (1st Cir. 1987). A hybrid claim specifically, "involves a claim that the employer violated the collective bargaining agreement and the union failed to handle properly the grievance of the plaintiff-employee." *Id.* Plaintiff has named the Union and Mr. Kephart as defendants in this case, as well as WRTA/CMTM and their respective managers, and

5

alleges that CMTM violated the CBA (Docket No. 14, at 6). Plaintiff also alleges that the Union "breached [their] duty of fair representation in [their] handling of the Plaintiff's 'grievance.'" *Id.* at 4. In *Cabarga Cruz v. Fundacion Educativa Ana G. Mendez, Inc.,* the court distinguished between hybrid claims and claims that are "purely a breach of contract action against the employer," where the appropriate statute of limitations would be "provided by state law for breach of contract actions." 822 F.2d 188, 191 (1st Cir. 1987). The court held that Dr. Cabarga's claim was "essentially a breach of contract claim," in part because "the court found no evidence that the union was guilty of unfair representation." *Id.* Here however, Plaintiff's claim against the Union is predicated on the Union's allegedly improper representation. Therefore, this is not a pure breach of contract claim against an employer. Although Plaintiff argues that his suit is broader than a hybrid claim, and alleges additional causes of action, this Court holds that the specific claim against the Union for breach of the duty of fair representation is part of a hybrid Section 301/fair representation claim.

In *DelCostello v. Int'l Bhd. of Teamsters,* the Supreme Court applied a six-month statute of limitations to hybrid Section 301/fair representation claims. 462 U.S. 151, 172 (1983).[5] "A cause of action in a hybrid Section 301/fair representation suit arises when the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing." *Arriaga-Zayas v. International Ladies' Garment Workers' Union-Puerto Rico Council*, 835 F.2d 11, 13 (1st Cir. 1987) (quotation marks and citation omitted). On March 9, 2018, Plaintiff sent a letter to the NLRB requesting reconsideration. The reply letter from the NLRB refers to Plaintiff's cases against CMTM/WRTA and the Union. Therefore, when Plaintiff wrote the March 9th letter, he knew, or should have known of the Union's alleged wrongdoing, in order to make his case against them. In

---

[5] *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 171-172 (1983) (explaining how the Supreme Court selected this federal statute and why it should be applied instead of state statutes).

the light most favorable to Plaintiff, the statute of limitations for this cause of action would have started to run on March 9, 2018, when he sent the letter. The cause of action would have continued to run even as Plaintiff was waiting for the NLRB to reply. *See Arriaga-Zayas v. International Ladies' Garment Workers' Union-Puerto Rico Council*, 835 F.2d 11, 14 (1st Cir. 1987) (stating that, "the filing of an unfair labor practice charge with the NLRB does not toll the statute of limitations on a hybrid § 301/fair representation action arising out of the same nucleus of operative fact"). Therefore, the statute of limitations on Plaintiff's claims ran, at the latest, on September 9, 2018, and he did not file his Complaint until November 30, 2018. Thus, I find that the statute of limitations has run on Plaintiff's fair representation claim and must be dismissed.

### b. Remaining Federal Claims

Plaintiff also claims the Union violated Title VII because they represented two other employees who were also caught using their cell phones while driving, and that these employees were not fired.

Title VII makes it unlawful for employers to:

(1) fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a). "These two proscriptions, often referred to as the 'disparate treatment' (or 'intentional discrimination') provision and the 'disparate impact' provision, are the only causes of action under Title VII." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S.Ct. 2028, 2032, 192 L.Ed.2d 35 (2015).

To establish a prima facie case of disparate treatment discrimination, a plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for his position; (3) his employer took an adverse employment action against him; and (4) some evidence of a causal link between his protected status and the adverse employment action. *Bhatti v. Trustees of Boston University*, 659 F.3d 64, 70 (1st Cir. 2011). Plaintiff does not allege that he is a member of a protected class, or that the adverse employment action by the Union could be linked to his protected status.

Plaintiff additionally alleges that the Union violated the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. These claims, under 42 U.S.C § 1983, require state action to give rise to a private cause of action. *See Brentwood Acad. V. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 295-305 (2001) (determining if the Tennessee Secondary School Athletic Association is a state actor for purposes of applying 42 U.S.C § 1983). Labor Unions, however, are not state actors. *Hovan v. United Brotherhood of Carpenters & Joiners,* 704 F.2d 641, 642-645 (1st Cir. 1983). Accordingly, Plaintiff's constitutional claims must be dismissed.

Plaintiff mentions 18 U.S.C. § 241. This is a criminal statute and there is no, "authority for permitting a private individual to initiate a criminal prosecution in his own name." *Keenan v. McGrath*, 328 F.2d 610, 611 (1st Cir. 1964).

### 2. State Law Claims Against the Union

"[S]tate law is preempted whenever a plaintiff's claim invokes rights derived from a union's duty of fair representation." *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers*, 132 F.3d 824, 830 (1st Cir. 1997); *see also Condon v. United Steelworkers of America*, 683 F.2d 590, 594-95 (1st Cir. 1982) (explaining that Congress "occupied the field" of "a union's rights and duties as the exclusive bargaining agent in carrying out its representational functions" and consequently "closed it to state regulation" (quoting *Teamsters, Chauffeurs &*

*Helpers Union v. Morton*, 377 U.S. 252, 261 (1964))). While the Complaint is not entirely clear, insofar as Plaintiff asserts claims of emotional distress, tortious interference with employment relationship, and breach of contract against the Union, these claims are preempted and must be dismissed.

Plaintiff also asserts a claim pursuant to Mass. Gen. Laws ch. 12, § 11I ("MCRA").[6] Pursuant to the statute, "any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or . . . of the commonwealth, has been interfered with, . . . may institute and prosecute in his own name." Mass. Gen. Laws ch. 12, § 11I. This section of the statute refers to Section 11H of the same statute, describing the manner of interference as, "threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion." *Id.* § 11H. Plaintiff alleges that the Union threatened and intimidated him when Mr. Kephart told Plaintiff, "either to resign or be fired and lose everything." (Docket No. 14, at 12). "[T]he exception for claims based on non-physical coercion remains a narrow one." *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 519 (1st Cir. 2009) (quotation marks and citation omitted); *see also Thomas v. Harrington*, 909 F.3d 483, 492 (1st Cir. 2018) ("It is rare for a MCRA claim to involve no physical threat of harm."). In addition, the Massachusetts Supreme Judicial Court has not "directly addressed the issue of whether, and under what circumstances, the termination of employment can be coercive." *Nolan v. CN8*, 656 F.3d 71, 78 (1st Cir. 2011).[7] At minimum, "Massachusetts courts have required 'a pattern of harassment and intimidation' to support a finding of non-physical

---

[6] The Union's actions related to this claim are different from those related to the breach of the duty of fair representation claim. Therefore, this claim will not be preempted, as it is not derived from the Union's duty of fair representation. *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers*, 132 F.3d 824, 830 (1st Cir. 1997).

[7] Most of the case law involves termination of at-will employees. *See Nolan v. CN8*, 656 F.3d 71 (1st Cir. 2011) (discussing the relevant case law and what makes at-will employees different from contract employees). Plaintiff is not an at-will employee.

9

coercion under the MCRA." *Thomas*, 909 F.3d at 493 (quoting *Howcroft v. City of Peabody*, 51 Mass. App. Ct. 573, 594 (2001)).  However, "by itself, a threat to use lawful means to reach an intended result is not actionable under [the MCRA.]" *Buster v. George W. Moore, Inc.*, 438 Mass. 635, 648 (2003) (quoting *Sena v. Commonwealth*, 417 Mass. 250, 263 (1994)).  Consequently, the Massachusetts Supreme Judicial Court has "found no violation of the [MCRA] in cases . . . where a plaintiff's own conduct provided independent grounds for the defendant to terminate its bargained-for obligations to a plaintiff, thereby causing the plaintiff an economic loss." *Id.*

Here, Plaintiff has not alleged any pattern of harassment or intimidation and the Company was entitled to terminate his employment.  Mr. Kephart simply highlighted Plaintiff's options: resign or be fired.  Consequently, Mr. Kephart's proposition is not actionable under the MCRA.

### 3. Claims Against Mr. Kephart

Plaintiff alleges various claims against Mr. Kephart in his individual and official capacity. The First Circuit has, "long held that 'union agents' are not personally liable to third parties for acts performed on the union's behalf in the collective bargaining process." *Montplaisir v. Leighton,* 875 F.2d 1, 4 (1st Cir. 1989) (quotation marks and citation omitted). Accordingly, the claims against Mr. Kephart must be dismissed.

### Conclusion

For the reasons stated above, Defendants' motion is ***granted***. (Docket No. 16).

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**