**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| RAYMOND R. MASON, SR, <br><br> Plaintiff, <br><br> v. <br><br> CENTRAL MASS TRANSIT MANAGEMENT, INC., WORCESTER REGIONAL TRANSIT AUTHORITY, DAVID TRABUCCO, JAMES PARKER, JONATHAN CHURCH, AMALGAMATED TRANSIT UNION LOCAL 22, & KENNETH KEPHART, <br><br> Defendants. | CIVIL ACTION <br><br> NO. 4:18-40202-TSH |

**ORDER AND MEMORANDUM ON DEFENDANTS CENTRAL MASS TRANSIT MANAGEMENT, INC., DAVID TRABUCCO, WORCESTER REGIONAL TRANSIT AUTHORITY, AND JONATHAN CHURCH'S MOTION TO DISMISS (Docket No. 34)**

**September 20, 2019**

**HILLMAN, D.J.**

Raymond R. Mason, Sr. ("Plaintiff") filed this action alleging state and federal law claims related to the termination of his employment. Central Mass Transit Management, Inc. ("CMTM"), David Trabucco ("Mr. Trabucco"), Worcester Regional Transit Authority ("WRTA"), and Jonathan Church ("Mr. Church") (collectively, "Defendants") move to dismiss all claims against them. (Docket No. 34). For the following reasons, the Court ***grants*** Defendants' motion.

**Background**

The following facts are taken from Plaintiff's First Amended Complaint (Docket No. 14) and assumed true for the purposes of this motion.

1

On May 5, 2003, Plaintiff began working for WRTA and CMTM as a part-time van driver. (Docket No. 14 at 3). On December 23, 2015, CMTM entered into a Supplemental Agreement with Amalgamated Transit Union Local 22 (the "Union") that stated, "if [an] employee is found to be using a personal electronic device and the employee is in front of the yellow line in a fixed route bus or in front of the curb side door well stanchion in a lift equipped van, the consequence will be immediate termination of employment by the Company." (Docket No. 14-1 at 6). Under that agreement, "an employee cannot challenge the discipline imposed for an employee's use of a personal electronic device while on duty." (Docket No. 14-1 at 6). Neither the Union nor CMTM circulated this agreement to their employees. (Docket No. 14 at 3–4).

On April 3, 2017, Plaintiff returned to work after a medical emergency at his home. (Docket No. 14 at 5). At 2:23 p.m., as he was leaving the parking lot of WRTA in his van, he received a call on his cell phone from Francesca Jandrow ("Ms. Jandrow"), Transportation Coordinator for CMTM. (Docket No. 14 at 6). Unsure if the call was related to the previous emergency, Plaintiff answered. (Docket No. 14 at 5). Ms. Jandrow offered him a night-time position at the WRTA Van Division. (Docket No. 14 at 5).

The next day, Mr. Trabucco, Assistant General Manager for CMTM, notified Plaintiff that CMTM was investigating Plaintiff's improper cell phone use while on duty. (Docket No. 14 at 10). Mr. Trabucco spoke with Business Agent Kenneth Kephart ("Mr. Kephart") and scheduled a disciplinary hearing for that day. (Docket No. 14 at 10). Mr. Kephart attended the hearing on Plaintiff's behalf because Plaintiff allegedly refused to be present. (Docket No. 14 at 10). However, Plaintiff claims that "there is absolutely no truth to Mr. Trabuco's account that 'Plaintiff refused to attend or be present at a hearing.'" (Docket No. 14 at 11).

After the hearing, Mr. Kephart asked Plaintiff to report to the company building. (Docket No. 14 at 1). Mr. Kephart met with Plaintiff and told him, "you have two choices, either to resign or be fired and lose everything." (Docket No. 14 at 12). Mr. Kephart alluded to a video showing Plaintiff using his phone while on duty, although he refused to let Plaintiff view this video. (Docket No. 14 at 12).

Plaintiff then met with Mr. Trabucco at the office of Jo-Ann Clougherty in Human Resources. (Docket No. 14 at 12). Mr. Trabucco instructed Plaintiff to sign the Notice of Termination. (Docket No. 14 at 12). Plaintiff signed the notice and was terminated from his position. (Docket No. 14 at 12). Plaintiff believes the word "resignation" was added to the notice after he signed it. (Docket No. 14 at 12).

After his termination, Plaintiff filed claims with the National Labor Relations Board ("NLRB"). Plaintiff provided the Court with a response letter from the NLRB, dated July 26, 2018, that references a March 9th, 2018, letter from Plaintiff to the NLRB, "requesting, for a second time, reconsideration of [the NLRB's] decision denying [Plaintiff's] appeal in the captioned cases," i.e., two cases against CMTM and WRTA and one against the Union (Docket No. 14-1 at 18).

## Legal Standard

In evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). To survive the motion, the complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Id.* at 555. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

Because Plaintiff appears *pro se*, the Court construes his pleadings more favorably than it would those drafted by an attorney. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, Plaintiff must comply with procedural and substantive law. *See Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

## Discussion

### 1. Constitutional, Entrapment, and Discrimination Claims

Plaintiff alleges several violations of the U.S. Constitution. For example, he contends that Defendants violated his right to confront his accuser pursuant to the Sixth Amendment and his right to due process under the Fifth and Fourteenth Amendments. Plaintiff, however, fails to assert a plausible entitlement to relief for any of his constitutional claims. The Sixth Amendment only pertains to criminal prosecutions. As Plaintiff's case is civil, the Sixth Amendment is inapplicable to his case. The Fifth and Fourteenth Amendments, moreover, only apply to government actors. *See, e.g.*, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Plaintiff has not alleged that any of the Defendants qualify as government actors, so these claims fail.

Plaintiff also asserts an entrapment claim against Defendants. But Massachusetts law does not recognize a cause of action for entrapment in a civil case. *See Pizzoferrato v. Tiberi*,

No. 09-11531-DJC, 2011 WL 3857125, at *5 (D. Mass. Sept. 1, 2011). Plaintiff thus cannot state a plausible entitlement to relief on this claim.

Finally, Plaintiff asserts discrimination claims against Defendants. Yet Plaintiff failed to allege membership in a protected class in his First Amended Complaint.[1] He also failed to allege administrative exhaustion.[2] *See Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 31 (1st Cir. 2009) ("As an initial matter, it is well-settled that an employee alleging discrimination must file an administrative claim with the EEOC or with a parallel state agency before a civil action may be brought."). Plaintiff thus has not established entitlement to relief.

Because Plaintiff has not stated a plausible claim for a constitutional violation, entrapment, or discrimination, the Court **_grants_** Defendants' motion to dismiss these claims.

### 2.  Remaining Claims Against Defendants

A.  *State Law Claims*

While the Complaint is not entirely clear, Plaintiff appears to assert state law claims of fraud, tortious interference with the employment relationship, retaliation, and breach of contract against Defendants.[3] Defendants argue that Section 301 of the Labor Management Relations Act ("Section 301"), 29 U.S.C. § 185, preempts these state law claims. (Docket No. 35 at 5–8).

Section 301 preempts a state-law claim if the state-law claim depends on the meaning of a provision within the collective bargaining agreement. *See Haggins v. Verizon New England, Inc.*, 648 F.3d 50, 54 (1st Cir. 2011). A state-law claims depends on the meaning of a provision

---

[1]  He only clarifies the type of discrimination at issue in his responsive briefing to this motion. (Docket No. 39 at 6–9). But as the Complaint does not contain factual allegations to support his argument, it cannot save this claim.

[2]  Indeed, Plaintiff suggested in the First Amended Complaint that his claims are still pending before the Massachusetts Commission Against Discrimination. (Docket No. 14 at 14).

[3]  Plaintiff also alleges conspiracy in his responsive briefing (Docket No. 39 at 2, 4, 5), but he did not assert this claim in his First Amended Complaint.

within the collective bargaining agreement if (1) "it alleges conduct that arguably constitutes a breach of duty that arises pursuant to a collective bargaining agreement," or (2) "its resolution arguably hinges upon an interpretation of the collective bargaining agreement." *Id.* (quoting *Flibotte v. Pa. Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997)).

Because the Court would need to consider provisions in the collective bargaining agreement between the Union and Defendants (the "Agreement") to assess the merits of Plaintiff's state law claims, Section 301 preempts them. Plaintiff's allegations of fraud, for example, rest on company policy regarding whether an employee may challenge termination for cell phone use, and that policy is governed by the Agreement. (Docket No. 14 at 3–4). Plaintiff's allegations of tortious interference with the employment relationship center on actions taken by Defendants to induce Plaintiff to violate the cell phone policy established by the Agreement. (Docket No. 14 at 5). Plaintiff's retaliation claim implicates the rationale for his termination under the Agreement.[4] Finally, Plaintiff's breach of contract claim inherently requires interpreting the Agreement. (Docket No. 14 at 14). The Court therefore ***grants*** the motion to dismiss Plaintiff's state law claims.

B. *Federal Law Claims*

Defendants assert that, to the extent that Plaintiff's claims relating to the Agreement arise under Section 301, they are untimely. (Docket No. 35 at 8–9). A court may grant a motion to dismiss for failure to comply with the applicable statute of limitations if the facts establishing the defense are "definitively ascertainable from the complaint" and "suffice to establish the

---

[4] It would also require the Court to determine whether Plaintiff's grievances, which accuse the company of "forcing" him to work past the end of his shift (Docket No. 39-1 at 26–29), constitute protected disclosures. This determination would in turn would depend on standards in the Agreement pertaining to overtime and the penalties for violations of those standards.

affirmative defense with certitude." *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 324 (1st Cir. 2008) (quotation marks and citation omitted).

"A hybrid action is one in which a union member brings a section 301 claim against his or her employer and a duty of fair representation claim against the union." *Graham v. Bay State Gas Co.*, 779 F.2d 93, 94 (1st Cir. 1985). In a hybrid action, a plaintiff claims "that the employer violated the collective bargaining agreement and the union failed to handle properly the grievance of the plaintiff-employee." *Cabarga Cruz v. Fundacion Educativa Ana G. Mendez, Inc.*, 822 F.2d 188, 191 (1st Cir. 1987). Because Plaintiff asserts that Defendants violated the Agreement and that the Union and Mr. Kephart failed to fairly represent him, he has filed a hybrid action under Section 301.[5] (Docket No. 14 at 4, 6, 11).

Hybrid actions are subject to a six-month statute of limitations. *See id.* A cause of action arises when "the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing." *Arriaga-Zayas v. International Ladies' Garment Workers' Union-Puerto Rico Council*, 835 F.2d 11, 13 (1st Cir. 1987) (internal quotation marks omitted). CMTM fired Plaintiff effective April 5, 2017. Plaintiff filed claims with the NLRB based on the allegations at issue in this case on August 3, 2017. And the July 26, 2018, response letter from the NLRB references a March 9, 2018, letter requesting reconsideration of the denial of appeals of claims against Defendants and the Union. (Docket No. 14-1 at 18). Even viewed in the light most favorable to Plaintiff, the statute of limitations for this cause of action would have started to run on March 9, 2018, when Plaintiff sent his letter to the NLRB.[6] Because Plaintiff did not file his

---

[5] The Court has since dismissed the claims against the Union and Mr. Kephart. (Docket No. 45). But this dismissal does not change underlying nature of Plaintiff's action.

[6] It would have continued to run even though Plaintiff was waiting for the NLRB to reply. *See Arriaga-Zayas*, 835 F.2d at 14 (1st Cir. 1987) (stating that "the filing of an unfair labor

Complaint until November 30, 2018, i.e., after the statute of limitations had passed, the Court ***grants*** Defendants' motion to dismiss.

*3. WRTA and Mr. Church*

WRTA and Mr. Church alternatively contend that the Court should dismiss the claims against them because they did not commit any of wrongful acts alleged. (Docket No. 35 at 10). The Court agrees that Plaintiff has failed to state a plausible claim against Mr. Church. In his First Amended Complaint, Plaintiff only references Mr. Church in the context of his assigning Plaintiff a faulty van to drive and his failure to respond to a Freedom of Information Act request. (Docket No. 14 at 10, 18). Neither of these allegations relates to the claims at issue here. The Court would thus also grant Mr. Church's motion to dismiss the claims against him on this ground, even if it had not dismissed the claims on their merits. But the Court determines that Plaintiff has pled facts which, if taken as true, would render WRTA vicariously liable for the conduct of CMTM and Mr. Trabucco as an employer. It would thus deny the motion to dismiss the claims against WRTA if it had not dismissed the claims on their merits.

## Conclusion

For the reasons stated above, Defendants' motion is ***granted***. (Docket No. 34). The Court dismisses Plaintiff's claims against Defendants.

**SO ORDERED**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

---

practice charge with the NLRB does not toll the statute of limitations on a hybrid § 301/fair representation action arising out of the same nucleus of operative fact").