UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RAYMOND R. MASON, SR, | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION |
| | ) |
| v. | ) NO. 4:18-40202-TSH |
| | ) |
| CENTRAL MASS TRANSIT | ) |
| MANAGEMENT, INC., WORCESTER | ) |
| REGIONAL TRANSIT AUTHORITY, | ) |
| DAVID TRABUCCO, JAMES PARKER, | ) |
| JONATHAN CHURCH, | ) |
| AMALGAMATED TRANSIT UNION | ) |
| LOCAL 22, & KENNETH KEPHART, | ) |
| | ) |
| Defendants. | ) |

**ORDER AND MEMORANDUM ON DEFENDANT JAMES PARKER'S MOTION TO DISMISS AMENDED COMPLAINT (Docket No. 36)**

**September 20, 2019**

**HILLMAN, D.J.**

Raymond R. Mason, Sr. ("Plaintiff") filed this action alleging state and federal law claims related to the termination of his employment. James Parker ("Defendant") moves to dismiss all claims against him. (Docket No. 36). For the following reasons, the Court ***grants*** Defendant's motion.

**Background**

The following facts are taken from Plaintiff's First Amended Complaint (Docket No. 14) and assumed true for the purposes of this motion.

On May 5, 2003, Plaintiff began working for Central Mass Transit Management, Inc. ("CMTM") and Worcester Regional Transit Authority ("WRTA") as a part-time van driver.

1

(Docket No. 14 at 3). On December 23, 2015, CMTM entered into a Supplemental Agreement with Amalgamated Transit Union Local 22 (the "Union") that stated, "if [an] employee is found to be using a personal electronic device and the employee is in front of the yellow line in a fixed route bus or in front of the curb side door well stanchion in a lift equipped van, the consequence will be immediate termination of employment by the Company." (Docket No. 14-1 at 6). Under that agreement, "an employee cannot challenge the discipline imposed for an employee's use of a personal electronic device while on duty." (Docket No. 14-1 at 6). Neither the Union nor CMTM circulated this agreement to their employees. (Docket No. 14 at 3–4).

On April 3, 2017, Plaintiff returned to work after a medical emergency at his home. (Docket No. 14 at 5). At 2:23 p.m., as he was leaving the parking lot of WRTA in his van, he received a call on his cell phone from Francesca Jandrow ("Ms. Jandrow"), Transportation Coordinator for CMTM. (Docket No. 14 at 6). Unsure if the call was related to the previous emergency, Plaintiff answered. (Docket No. 14 at 5). Ms. Jandrow offered him a night-time position at the WRTA Van Division. (Docket No. 14 at 5).

The next day, David Trabucco ("Mr. Trabucco"), Assistant General Manager for CMTM, notified Plaintiff that CMTM was investigating Plaintiff's improper cell phone use while on duty. (Docket No. 14 at 10). Mr. Trabucco spoke with Business Agent Kenneth Kephart ("Mr. Kephart") and scheduled a disciplinary hearing for that day. (Docket No. 14 at 10). Mr. Kephart attended the hearing on Plaintiff's behalf because Plaintiff allegedly refused to be present. (Docket No. 14 at 10). However, Plaintiff claims that "there is absolutely no truth to Mr. Trabuco's account that 'Plaintiff refused to attend or be present at a hearing.'" (Docket No. 14 at 11).

After the hearing, Mr. Kephart asked Plaintiff to report to the company building. (Docket No. 14 at 1). Mr. Kephart met with Plaintiff and told him, "you have two choices, either to resign or be fired and lose everything." (Docket No. 14 at 12). Mr. Kephart alluded to a video showing Plaintiff using his phone while on duty, although he refused to let Plaintiff view this video. (Docket No. 14 at 12).

Plaintiff then met with Mr. Trabucco at the office of Jo-Ann Clougherty in Human Resources. (Docket No. 14 at 12). Mr. Trabucco instructed Plaintiff to sign the Notice of Termination. (Docket No. 14 at 12). Plaintiff signed the notice and was terminated from his position. (Docket No. 14 at 12). Plaintiff believes the word "resignation" was added to the notice after he signed it. (Docket No. 14 at 12).

After his termination, Plaintiff filed claims with the National Labor Relations Board ("NLRB"). Plaintiff provided the Court with a response letter from the NLRB, dated July 26, 2018, that references a March 9th, 2018, letter from Plaintiff to the NLRB, "requesting, for a second time, reconsideration of [the NLRB's] decision denying [Plaintiff's] appeal in the captioned cases," i.e., two cases against CMTM and WRTA and one against the Union (Docket No. 14-1 at 18).

### **Legal Standard**

In evaluating a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Airlines, Inc.*, 199 F.3d 68, 69 (1st Cir. 2000). To survive the motion, the complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Id.* at 555.  "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

Because Plaintiff appears *pro se*, the Court construes his pleadings more favorably than it would those drafted by an attorney.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nevertheless, Plaintiff must comply with procedural and substantive law. *See Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).

## Discussion

*1. Failure to State a Claim for Relief*

Plaintiff has failed to state any plausible claim for relief against Defendant.  Plaintiff references Defendant four times in his First Amended Complaint.  First, Plaintiff provides Defendant's title and address. (Docket No. 14 at 2).  Second, Plaintiff asserts, without further factual support, that Defendant "intentionally interfered with Plaintiff's employment relationship and thereby caused the Plaintiff to lose his job for the CMTM."  (Docket No. 14 at 3).  Third, Plaintiff states that Mr. Kephart initially named Defendant as the witness to Plaintiff's telephone call.  (Docket No. 14 at 8).  Fourth, Plaintiff asserts, again without further factual support, that Defendant "breached the contract by his employer calling and provoking Plaintiff into answering his cell phone, and as such, Plaintiff's termination was without cause." (Docket No. 14 at 18). The first and third allegations, although factual, do not establish any claim for relief against Defendant.  The second and fourth allegations are conclusory and do not "supply facts adequate

to show" intentional interference with Plaintiff's employment relationship or breach of contract. *See Twombly*, 550 U.S. at 557. Because Plaintiff has not alleged a "plausible entitlement to relief" against Defendant, *see id.* at 559, the Court **_grants_** Defendant's motion to dismiss the claims against him.

2.   *Substantive Grounds*

Even if Plaintiff had stated a claim against Defendant, however, the Court would dismiss on other grounds.

   A.  <u>Constitutional Claims</u>

Plaintiff alleges several violations of the U.S. Constitution. For example, he contends that Defendant violated his right to confront his accuser pursuant to the Sixth Amendment and his right to due process under the Fifth and Fourteenth Amendments. But the Sixth Amendment only pertains to criminal prosecutions, and Plaintiff's case is civil. And the Fifth and Fourteenth Amendments only apply to government actors, *see, e.g.*, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982), and Plaintiff has not alleged that Defendant qualifies as a government actor. The Court would therefore **_grant_** the motion to dismiss the constitutional claims on these grounds.

   B.  <u>Entrapment Claim</u>

Plaintiff asserts an entrapment claim against Defendant. But Massachusetts law does not recognize a cause of action for entrapment in a civil case. *See Pizzoferrato v. Tiberi*, No. 09-11531-DJC, 2011 WL 3857125, at *5 (D. Mass. Sept. 1, 2011). The Court would therefore **_grant_** the motion to dismiss on the entrapment claim on this ground.

C. *Discrimination Claims*

Plaintiff also asserts discrimination claims against Defendant. Yet Plaintiff failed to allege membership in a protected class in his First Amended Complaint.[1] He also failed to allege administrative exhaustion.[2] *See Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 31 (1st Cir. 2009) ("As an initial matter, it is well-settled that an employee alleging discrimination must file an administrative claim with the EEOC or with a parallel state agency before a civil action may be brought."). As allegations to this effect are a prerequisite of any discrimination claim, Plaintiff, the Court would thus also **_grant_** the motion to dismiss Plaintiff's discrimination claims on this ground.

D. *Section 301 Claims*

Finally, Plaintiff asserts claims of fraud, tortious interference with the employment relationship, retaliation, and breach of contract.[3] But Section 301 preempts these state law claims because each one hinges on the meaning of provisions in the collective bargaining agreement between the Union and CMTM/WRTA (the "Agreement"). *See Haggins v. Verizon New England, Inc.*, 648 F.3d 50, 54 (1st Cir. 2011) (noting that Section 301 preempts a state law claim if the state law claim (1) "alleges conduct that arguably constitutes a breach of duty that arises pursuant to a collective bargaining agreement," or (2) "hinges upon an interpretation of the collective bargaining agreement" (quoting *Flibotte v. Pa. Truck Lines, Inc.*, 131 F.3d 21, 26 (1st Cir. 1997))). Plaintiff's allegations of fraud, for example, rest on company policy regarding

---

[1] He only clarifies the type of discrimination at issue in his responsive briefing to this motion. (Docket No. 38 at 8–9). But as the Complaint does not contain factual allegations to support his argument, it cannot save this claim.

[2] Indeed, Plaintiff suggested in the First Amended Complaint that his claims are still pending before the Massachusetts Commission Against Discrimination. (Docket No. 14 at 14).

[3] Plaintiff also alleges conspiracy in his responsive briefing (Docket No. 38 at 2, 4, 5), but he did not assert this claim in his First Amended Complaint.

whether an employee may challenge termination for cell phone use, and that policy is governed by the Agreement.  (Docket No. 14 at 3–4).  Plaintiff's allegations of tortious interference with the employment relationship center on actions taken by Defendants to induce Plaintiff to violate the cell phone policy established by the Agreement.  (Docket No. 14 at 5).  Plaintiff's retaliation claim implicates the rationale for his termination under the Agreement.  Finally, Plaintiff's breach of contract claim inherently requires interpreting the Agreement.  (Docket No. 14 at 14).  The Court would therefore ***grant*** the motion to dismiss the state law claims on this ground.

And to the extent that Plaintiff's claims relating to the Agreement arise under Section 301, the Court would find them untimely.  Hybrid actions[4] are subject to a six-month statute of limitations.  *Cabarga Cruz*, 822 F.2d at 191.  A cause of action arises when "the plaintiff knows, or reasonably should know, of the acts constituting the union's alleged wrongdoing." *Arriaga-Zayas v. International Ladies' Garment Workers' Union-Puerto Rico Council*, 835 F.2d 11, 13 (1st Cir. 1987) (internal quotation marks omitted).  The July 26, 2018, response letter from the NLRB references a March 9, 2018, letter requesting reconsideration of the denial of appeals of claims against CMTM/WRTA and the Union.  (Docket No. 14-1 at 18).  Plaintiff alleges that he only learned about Defendant's involvement when he received the July 26, 2018, letter.  But Defendant was General Manager of CMTM before this date, and the NLRB letter does not reference Defendant's liability.  Thus, even viewed in the light most favorable to Plaintiff, the

---

[4]  "A hybrid action is one in which a union member brings a section 301 claim against his or her employer and a duty of fair representation claim against the union." *Graham v. Bay State Gas Co*., 779 F.2d 93, 94 (1st Cir. 1985).  In a hybrid action, a plaintiff claims "that the employer violated the collective bargaining agreement and the union failed to handle properly the grievance of the plaintiff-employee." *Cabarga Cruz v. Fundacion Educativa Ana G. Mendez, Inc*., 822 F.2d 188, 191 (1st Cir. 1987).  Because Plaintiff asserts that CMTM, WRTA, Mr. Church, Mr. Trabucco, and Defendant violated the Agreement and that the Union and Mr. Kephart failed to fairly represent him, he has filed a hybrid action under Section 301.  (Docket No. 14 at 4, 6, 11).

statute of limitations for this cause of action would have started to run on March 9, 2018, when Plaintiff sent his letter to the NLRB.[5] Because Plaintiff did not file his Complaint until November 30, 2018, i.e., after the statute of limitations had passed, the Court would ***grant*** Defendant's motion to dismiss Plaintiff's Section 301 claims on this ground.[6]

## Conclusion

For the reasons stated above, Defendant's motion is ***granted***. (Docket No. 36). The Court dismisses Plaintiff's claims against Defendant.

**SO ORDERED**

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

---

[5] It would have continued to run even though Plaintiff was waiting for the NLRB to reply. *See Arriaga-Zayas*, 835 F.2d at 14 (1st Cir. 1987) (stating that "the filing of an unfair labor practice charge with the NLRB does not toll the statute of limitations on a hybrid § 301/fair representation action arising out of the same nucleus of operative fact").

[6] Defendant alternatively contends that he was not in privity of contract with Plaintiff and that a plaintiff cannot assert a Section 301 action against an individual employee. But Plaintiff is suing Defendant "in his official capacity" as General Manager of CMTM, not in his individual capacity. (Docket No. 14 at 2).